IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC 28 2018

JEFFREY P. COLWELL
CLERK

Civil Action No. '18 - CV - 03344

DOMINIQUE CHRISTIAN,

    Plaintiff,

v.

ROBUSTWEALTH

    Defendant.

## COMPLAINT

Plaintiff Dominique Christian proceeding Pro Se, submits this Complaint against RobustWealth ("Defendant") and states and alleges as follows:

### PRELIMINARY STATEMENTS

1, This is an employment discrimination suit brought by a former employee of RobustWealth who was discriminated against because of her disability. In retaliation for reporting the same, Defendants exposed the plaintiff to a hostile work environment and eventually terminated her contract for employment in violation of Title VII of the Civil Right Act of 1964 and the Americans with Disabilities Act.

### PARITES

2, Plaintiff, during her employment with the Defendant, was a resident of Colorado.

3, Defendant, RobustWealth is a New Jersey Limited Liability Company ("LLC") with a principal office located in Lambertville, NJ.

4,      Defendant, RobustWealth operates an office in Colorado located at 2420 17th Street, 3rd Floor, Denver, Colorado, 80202 ("The Lab" WeWork Building). Plaintiff was employed at the Denver location from November 27, 2017 through January 12, 2018.

## JURISDICTION AND VENUE

5,      This action arises under the laws of the United States. Jurisdiction is conferred upon this court pursuant to 28 U.S.C. §§ 1331 and 1343.

6,      Plaintiff brings this action under Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, et seq.

7,      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because alleged unlawful conduct occurred in the District of Colorado.

## STATEMENT OF FACTS

8,      Plaintiff Dominique Christian has congenital visual impairment(s) known as Optic Nerve Hypoplasia ("ONH") and Nystagmus.

9,      Ms. Christian understands that she has rights under ADA and is aware that she must disclose her disability to Human Resources ("HR") or a manager if she requires a reasonable accommodation.

10,     Although Ms. Christian has visual limitations, she has worked successfully since around age 15; including completing formal education and both the General Securities Representative Exam ("Series 7"), a test for registered representatives ("stockbrokers") and the Uniform Securities State Law Exam ("Series 63") administered through Financial Industry Regulatory Authority ("FINRA").

11,     Ms. Christian keeps her visual impairments confidential unless requesting an accommodation to avoid preferential treatment and/or questions about her congenital illness.

12,     At the time of her termination, Ms. Christian worked for RobustWealth as an Assistant Vice President of Sales ("AVP") in Denver, Colorado.

13, Prior to Ms. Christian being employed by RobustWealth as AVP, she worked successfully for Charles Schwab & Co. and was promoted to various positions (Financial Representative, Trading Specialist, and High Net Worth Representative) over the course of about two years.

14, Ms. Christian started her position as AVP on November 27, 2017.

15, Ms. Christian was one of three employees located in the downtown Denver location.

16, Monica Rye was hired as AVP of Sales on November 27, 2017 along with Ms. Christian. Ms. Ryu was responsible for sales leads "West of the Mississippi" and Ms. Christian was responsible for working sales leads "East of the Mississippi." Both ladies reported directly to Jessica Wilson, Vice President of Sales and Strategic Relationships ("manager").

17, Ms. Christian did not initially disclose her visual impairment to HR because she did not immediately require an accommodation. Like other employees, Ms. Christian was provided two large monitors and a personal laptop computer.

18, Ms. Christian often uses a "magnifier" on both laptop and desktop computers. A magnifier is a preinstalled windows application for visually impaired people to use when running Microsoft Windows.

19, On November 28, 2017 Ms. Christian and Ms. Ryu reported to Lambertville, NJ for new hire training. Training was from November 28, 2017 through December 1, 2017. Training was mostly administered by Steven Glenn, Sales Operations Associate and Ryan Horvath, Vice President of Advisor Services.

20, On November 30, 2017, Ms. Christian, Ms. Ryu, Mr. Glenn, and Mr. Horvath attended a training session in a conference room in the upper level of the NJ location.

21, Ms. Christian had an issue downloading adobe reader to her laptop as it required an administrative passcode. Upon request, Ms. Christian handed over her company laptop to Mr. Horvath for assistance and in doing so, left the magnifier application running.

22, Once in control of the laptop, Mr. Horvath questioned Ms. Christian about the visual aide on the computer.

23, Ms. Christian explained that she had mistakenly left the magnifier application on her computer when she handed it over. Mr. Horvath questioned Ms. Christian as to why she had a magnifier on her computer. Ms. Christian explained that it was to help her "see things larger."

24, Mr. Horvath continued his line of questioning by asking, "but why?" Ms. Christian was then forced to explain that she had a visual disability and the visual aide helps her do her job easier. Ms. Christian went on to explain that it did not affect her quality of work.

25, Moments later, Mr. Glenn said, "I am with Ryan. Did you disclose this to HR?" Ms. Christian continued to explain that it had no direct effect on the quality of her work and asked for the conversation to end. This event caused Ms. Christian a great amount of shame as she is committed to keeping her visual impairment personal.

26, On December 1, 2017, Ms. Christian and Ms. Ryu attended another training session with Mr. Horvath. During this session, Mr. Horvath asked Ms. Christian to read from a projector. Ms. Christian explained that she would need to read directly from her own personal laptop. Mr. Horvath then said, "Oh yeah, because you have that vision thingy."

27, Ms. Ryu and Ms. Christian reported to work at the Denver location on December 4, 2017. Ms. Wilson was not present, so Mr. Horvath was responsible for overseeing the new sales team members. -

28, During this time, Ms. Christian noticed a significant change in Mr. Horvath's behavior towards her. Ms. Christian noticed that Ms. Ryu was in constant communication with Mr. Horvath (via phone, email, and slack ("instant message system"), received more assistance with demos and training, and was being assigned leads in her (Ms. Christian) sales area.

29, On or around December 5, 2017 during a conversation with Ms. Ryu, Ms. Christian was attempting to complete a demo. Ms. Ryu asked, "didn't Ryan (Mr. Horvath) help you with that?" Ms. Christian explained that she had reached out to Mr. Horvath for help, but he said he would not be offering his assistance. Ms. Ryu then said, "that is strange, he just did that for me today." During the remainder of the first week, Ms. Christian was continuously forwarded emails from Ms. Ryu (instead of Mr. Horvath directly) and provided minimal training in comparison to her teammate.

30, After consulting a close friend and relatives, Ms. Christian decided to reach out to Ms. Wilson on the morning of December 11, 2017 to check in. Ms. Christian asked Ms. Wilson to have the meeting in private. Ms. Christian also pleaded with Ms. Wilson to keep the conversation confidential from Mike Kerins ("CEO") as she did not want word to get back to Mr. Horvath or the others in the small office.

31, During the meeting, Ms. Christian asked Ms. Wilson about her performance. Ms. Wilson explained that she had been on a business meeting, but assured Ms. Christian that she was doing satisfactory work. Ms. Christian was emotional when explaining that she felt Mr. Horvath was showing Ms. Ryu preferential treatment regarding training and sales leads. Ms. Christian also disclosed that Mr. Horvath had rarely been in direct communication with her and was assigning her sales leads to Ms. Ryu.

32, Ms. Christian asked Ms. Wilson if they had plans to terminate her employment. Ms. Wilson said they did not have plans to fire her and that they wanted her to be a part of the team. Ms. Wilson asked for Ms. Christian to forward examples of forwarded emails from Ms. Ryu and said she would get to the bottom of the issue.

33, Upon request from Ms. Christian, Ms. Wilson setup a skype phone call with Vice President of People, Serena Ziskroit ("HR"). During the meeting on or around December 13, Ms. Ziskroit focused mostly on disability accommodation, not mistreatment from Mr. Horvath. Ms. Christian explained that she did not currently need an accommodation as the two monitors was good enough. Ms. Christian, Ms. Wilson, and Ms. Ziskroit ended the conversation after Ms. Ziskroit and Ms. Wilson agreed to talk to Mr.

Horvath about "best practices" for training new employees. Ms. Wilson and Ms. Ziskroit agreed to follow up in a couple of weeks to check in.

34, Circa December 19, 2017, Ms. Christian and Ms. Ryu joined Ms. Wilson and the team in Lambertville, NJ for a three-day business meeting.

35, During this time, Ms. Christian experienced a hostile work environment. Ms. Christian could hear Ms. Ryu and Mr. Horvath discussing the business conference to Orlando. Ms. Christian was to attend the conference with Mr. Horvath. Mr. Horvath was explaining to Ms. Ryu that he did not want to attend the meeting with Ms. Christian.

36, Circa December 20, 2017, Ms. Christian was to complete an assigned task for which she had not been trained. Ms. Christian walked into Mr. Horvath's office and asked if he could explain the process because she had not received training. Mr. Horvath was not much help, so Ms. Christian left the office and attempted to do the best she could without assistance. Moments later, Mr. Glenn walked into Mr. Horvath's office. Mr. Horvath was angry and yelling. He said, "I'm only being nice to her because she is sick. She is a liar and won't be here much longer."

37, Ms. Christian had been ill that week with a toothache, headache, cold and sore throat.

38, Shortly after the outbursts, Ms. Christian asked Ms. Wilson if she could work from her hotel. Ms. Wilson knew Ms. Christian was ill and said it was fine. Mr. Glenn offered Ms. Christian a ride to her hotel room, but Ms. Christian declined.

39, On December 11, 2017 (two days before Ms. Christian asked Ms. Wilson to call an HR meeting to discuss Mr. Horvath's behavior), Ms. Christian was approved by Ms. Ziskroit to fly from Philadelphia, PA to Pittsburgh, PA. Ms. Christian had previously explained to Ms. Wilson that she had a wedding at home (near Pittsburgh) and asked if it was OK to fly back to Pennsylvania instead of Colorado. Ms. Wilson agreed.

40,	Circa December 15, 2017, Ms. Christian noticed a change in Ms. Wilson's behavior towards her. Ms. Christian noticed that Ms. Wilson had stopped replying to emails regarding Mr. Horvath's biased behavior. Ms. Christian also noticed that Ms. Wilson became more critical of her. Ms. Wilson began to assign Ms. Christian assignments that did not pertain to her duties, but not Ms. Ryu.

41,	Circa December 22, 2017, Ms. Christian worked from her hotel room in Steubenville, OH. During her lunch break/break time, Ms. Christian had a nearby nail salon appointment for the wedding. During this time, Mr. Horvath contacted Ms. Christian about a client that was trying to reach her. Ms. Christian had not had an appointment scheduled with the client as he never confirmed the meeting. Ms. Christian explained that she was at a salon and asked Mr. Horvath if he could assist.

42,	Prior to Ms. Christian being employed by RobustWealth, she had a preplanned vacation that she disclosed to Ms. Wilson before November 27, 2017. Ms. Wilson had no objections to the vacation.

43,	Ms. Christian entered the preplanned vacation into Zenefits and it was approved by Ms. Wilson.

44,	Circa December 18, 2017, Ms. Wilson contacted Ms. Christian via slack and asked when she would be returning to work. Ms. Christian told Ms. Wilson that she would be returning on January 3, 2018. Ms. Wilson informed Ms. Christian that she had not entered a return date of Jan 3· but instead Jan 2. Ms. Christin (via slack) informed Ms. Wilson that she had made an honest mistake and would be willing to rebook her ticket. Ms. Wilson told Ms. Christian that she did not have to reschedule her flight. Ms. Christian apologized for the misunderstanding and explained to Ms. Wilson that she would be more careful moving forward.

45,	RobustWealth provides its employees with unlimited vacation time off. Ms. Christian had no reason to take unauthorized vacation, as it was freely given, with approval from management.

46,	Circa January 3, 2917, Ms. Christian, once again, reached out to Ms. Wilson to schedule a skype call with HR. During this call with Ms. Wilson and Ms. Ziskroit, Ms. Christian mentioned that Mr. Horvath's behavior had not improved and that she overheard him expressing his displeasure in attending

the conference with her in Orlando. Ms. Christian also mentioned that she overheard Mr. Horvath's conversation with Mr. Glenn in NJ when he alleged that she "wouldn't be there much longer."

47, Ms. Christian found the skype meeting to be very uncomfortable. No solutions were given and it was clear to Ms. Christian that both her manager and HR had no interest in resolving the issues.

48, Ms. Christian suggested that she would attend the conference with Mr. Horvath and try and work out whatever differences he had against her.

49, Circa January 8, 2018, Ms. Wilson and Ms. Ryu flew out to NJ without Ms. Christian. Alarmed that there were unexplainable charges on her corporate card, that seemingly she was the only one not present in NJ, and that she was being left out of company emails and asked not to purchase her fight to Orlando, Ms. Christian consulted an attorney.

50, She explained that she felt she was in danger of losing her job because she had not initially disclosed her disability and reported Mr. Horvath. The attorney gave guidance to document everything and to file a complaint with the Equal Employment Opportunity Commission ("EEOC") – **Exhibit C**

51, Ms. Christian gathered notes and documents.

52, On January 11, 2018, Ms. Christian filed a complaint with HR. She alleged that Ms. Wilson's behavior had been negative towards her since just after she reported Mr. Horvath's discriminatory acts. Ms. Christian also explained to HR that she was uncomfortable because, although, Ms. Ryu had purchased her flight to Orlando, Ms. Christian had been instructed by Ms. Wilson not to purchase her flight to the conference.

53, Ms. Christian was never given any verbal or written warning about her performance or misconduct. Ms. Christian reported to work on time and frequently worked outside of work and during her vacation to ensure client questions were answered.

54, Ms. Christian has a long satisfactory work history and as far as she understands, had never received a written warning, nor a termination of employment.

55, Ms. Christian had never been given an Employee Handbook as the Defendant did not have one at the time of her hire.

56, To Ms. Christian's knowledge, she had not been made aware of RobustWealth's Vacation Policy.

57, On January 12, 2018, one day after filing a complaint with HR against Ms. Wilson, Ms. Christian was called via skype conference with Ms. Ziskroit and Ms. Wilson and her contract for employment was terminated.

58, Ms. Ziskroit alleged that Ms. Christian was being terminated because she took an unauthorized vacation.

59, Ms. Christian had not been made aware of any such violations and had received approval for all time off by Ms. Ziskroit and Ms. Wilson.

60, This termination came 17 days after Ms. Christian allegedly took unauthorized vacation time and one day after reporting her manager, Ms. Wilson.

61, The allegations brought forth by Ms. Wilson and HR are a sham and brought forward to cover up Title VII and ADA violations. Ms. Christian's termination was in retaliation for reporting Mr. Horvath and Ms. Wilson.

62, Ms. Ziskroit, during the final skype call, offered Ms. Christian a severance package in exchange Ms. Christian would not be able to pursue legal action against RobustWealth. Ms. Christian refused to sign the Separation Agreement and on April 23, 2018 filed a formal complaint with the EEOC.

63, On September 28, 2018, the EEOC granted Ms. Christian a right to sue. **Exhibit D**

## FIRST CLAIM FOR RELIEF
### (Retaliation in Violation of Title VII)

64,     The foregoing paragraphs are realleged and incorporated by reference herein

65,     The Defendants conduct as alleged above constitutes retaliation against the Plaintiff because she engaged in activities protected by Title VII. The stated reasons by the Defendant to terminate Ms. Christian's employment were not true. They are pretext to hide the Defendant's retaliation.

## SECOND CLAIM FOR RELIEF
### (Violations of the Americans with Disabilities Act)

66,     The foregoing paragraphs are realleged and incorporated by reference herein.

67,     Plaintiff has a visual impairment and was treated differently than her colleague without a disability. Plaintiff was subjected to discrimination, a hostile work environment, least desirable assignments and less training.

68,     Plaintiff noticed discrimination after her disability was disclosed.

69,     Defendants discrimination towards the Plaintiff is in direct violation of 42 U.S.C. §§ 12101, et seq of ADA.

## THIRD CLAIM FOR RELIEF
### (Hostile Work Environment)

70,     The foregoing paragraphs are realleged and incorporated by reference herein.

71,     The Defendant's conduct as alleged above created a hostile work environment in violation of Title VII.72

72,     The Plaintiff was exposed to unfair and hostile working conditions in that she was left out of company emails, received less or no training on important job functions, had her job security questioned, was given some less desirable assignments, was forced to cancel her business trip, and endured whispers and yelling from Mr. Horvath.

73, The Plaintiff was also forced to disclose her disability in front of her colleagues due to Mr. Horvath's questioning of her visual aide.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor against Defendant and order the following relief as allowed by law:

A, Compensatory damages, including but not limited to those for emotional distress, mental anguish, loss of enjoyment of life, and inconvenience;

B, Back pay and benefits;

C, Front pay and benefits;

D, Punitive damages;

E, Costs and attorney's fees incurred with this lawsuit;

F, Pre-judgement and post-judgement interest at the highest lawful rate;

G, Such further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 26th day of December 2018

*/s/ Dominique Christian*

Dominique Christian

Pro Se

424 W. Diversey Pwky, 423

Chicago, IL 60614

**EXHIBIT B**

*Defendant's Mailing Address:*

(Principal Address)

RobustWealth, LLC

204 N. Union Street

Lambertville, NJ 08530

Phone: (609)483-8101

**Plaintiff's Mailing Address:**

Dominque Christian

424 W. Diversey Pwky, 423

Chicago, IL 60614

25-MAY-2018 02:15 From:               00302105274029     To:000013038661085     Page:1/1

Exhibit C

MAY 25 2018

EEOC DENVER FIELD OFFICE

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>541-2018-00894 |
|---|---|---|

Colorado Civil Rights Division     and EEOC
*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Dominique Christian | (740) 424-0851 | |

Street Address: 1531 Stout St 217, Denver, CO 80202

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| ROBUSTWEALTH | Unknown | (609) 483-8101 |

Street Address: 204 N Union St, Lambertville, NJ 08530

DISCRIMINATION BASED ON (Check appropriate box(es).)
☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 12-11-2017    Latest: 01-12-2018
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with the above named Respondent on November 27, 2017. On November 30, 2017, a coworker found out about my disability and began to treat me differently. I reported the mistreatment to my manager on December 11, 2017. My manager began to treat me differently including, but not limited to, giving me least desirable assignments and cancelling my business trips. I reported my manager's mistreatment to Human Resources on January 11, 2018. I was discharged the following day for an alleged policy violation. The Respondent was a new company and had not dispersed any policies or procedures at the time of my termination. Severance was offered, but I declined to sign the conditional waiver.

I believe I have been unlawfully retaliated against and discriminated against because of a disability within the meaning of the Americans with Disabilities Act of 1990, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

X 05/25/18   X *Dominique Christian*
Date            Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

Exhibit D

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Dominique Christian<br>7 Captain Drive<br>Unit 315<br>Emeryville, CA 94608 | From: | Denver Field Office<br>303 East 17th Avenue<br>Suite 410<br>Denver, CO 80203 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 541-2018-00894 | Christopher D. Padilla,<br>Supervisory Investigator | (303) 866-1336 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

- NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Amy Burkholder,
Field Office Director

SEP 28 2018
(Date Mailed)

Enclosures(s)

cc: Michael Kerins
Human Resources
ROBUSTWEALTH
204 N Union St
Lambertville, NJ 08530